UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| MARYFRANCES BAILEY, | ) | CASE NO. C05-1496-JCC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | RE: SOCIAL SECURITY |
| JO ANNE B. BARNHART, Commissioner | ) | DISABILITY APPEAL |
| of Social Security | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Mary Frances Bailey proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Disability Insurance (DI) benefits after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, it is recommended that this matter be AFFIRMED.

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1943.[1] She completed high school and an associate's degree

_____

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01    in business.  Plaintiff previously worked as an information technology specialist and business

02    analyst for U.S. West/Qwest.  She applied for SSI in May 2001, alleging disability since April 2,

03    2001 due to the residual effects of a stroke she suffered on that same date and blood clotting. Her

04    application was denied initially and on reconsideration, and she timely requested a hearing.

05        ALJ Verrell Dethloff held a hearing on September 29, 2004, taking testimony from plaintiff

06    and her daughter, Mary Wideman-Williams.  (AR 524-50.)  He issued a decision finding plaintiff

07    not disabled on December 28, 2004. (AR 14-24.)

08        Plaintiff timely appealed. On August 19, 2005, the Appeals Council denied her request for

09    review.  (AR 6-9.)  Plaintiff appealed this final decision of the Commissioner to this Court.

10    **JURISDICTION**

11        The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

12    **DISCUSSION**

13        The Commissioner follows a five-step sequential evaluation process for determining

14    whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must

15    be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not

16    engaged in substantial gainful activity since her alleged onset date.  At step two, it must be

17    determined whether a claimant suffers from a severe impairment.  The ALJ found plaintiff's

18    residuals from a right cerbrovascular accident/lacunar stroke with left hemiparesis severe.  Step

19    three asks whether a claimant's impairments meet or equal a listed impairment.  The ALJ found

20    that plaintiff's impairment did not meet or equal the criteria for any listed impairments.  If a

21    claimant's impairments do not meet or equal a listing, the Commissioner must assess RFC and

22    determine at step four whether the claimant has demonstrated an inability to perform past relevant

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01    work. The ALJ found plaintiff able to perform her past relevant work as an information

02    technology specialist and business analyst for a telephone company. If a claimant demonstrates

03    an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate

04    at step five that the claimant retains the capacity to make an adjustment to work that exists in

05    significant levels in the national economy. Finding plaintiff not disabled at step four, the ALJ did

06    not proceed to step five.

07         This Court's review of the ALJ's decision is limited to whether the decision is in

08    accordance with the law and the findings supported by substantial evidence in the record as a

09    whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more

10    than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

11    mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750

12    (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's

13    decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

14    2002).

15         Plaintiff argues that the ALJ should have found her blood disorder and cognitive residual

16    difficulties to be severe impairments at step two, did not properly consider the medical evidence

17    in the record, failed to give clear and convincing reasons for discrediting her, improperly dismissed

18    lay witness evidence, and should have called a vocational expert. She asks that the Court remand

19    this matter for an award of benefits or, alternatively, for further administrative proceedings. The

20    Commissioner argues that the ALJ's decision is supported by substantial evidence and should be

21    affirmed. For the reasons described below, the undersigned agrees with the Commissioner that

22    this matter should be affirmed.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

01                                 <u>Step Two</u>

02          At step two, plaintiff must make a threshold showing that her medically determinable

03  impairments significantly limit her ability to perform basic work activities.  *See Bowen v. Yuckert*,

04  482 U.S. 137, 145 (1987) and 20 C.F.R. § 416.920(c).  "Basic work activities" refers to "the

05  abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 416.921(b).  "An impairment or

06  combination of impairments can be found 'not severe' only if the evidence establishes a slight

07  abnormality that has 'no more than a minimal effect on an individual's ability to work.'"  *Smolen

08  v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling (SSR) 85-28).

09  "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims."  *Id.*

10  (citing *Bowen*, 482 U.S. at 153-54).  An ALJ is also required to consider the "combined effect"

11  of an individual's impairments in considering severity.  *Id.*

12          In this case, the ALJ found only plaintiff's physical residuals from a right cerbrovascular

13  accident/lacunar stroke with left hemiparesis severe.  Plaintiff argues that the ALJ should have also

14  found her blood disorder and cognitive residual impairments severe, and asserts that those

15  impairments directly affected her ability to perform her past work.

16  A.      <u>Blood Disorder</u>

17          The blood disorder refers to plaintiff's clotting abnormality, due to Leiden factor V

18  deficiency.  She asserts that this condition required her to stand and move around sooner than

19  every two hours in order to prevent blood clotting and another stroke (AR 333, 537), that she had

20  to rest for thirty minutes after sitting for two hours (AR 114), that she was unable to take hormone

21  replacements, resulting in her inability to sleep well at night (AR 105, 133, 135), and that she was

22  fatigued and napped daily for about two hours (*see, e.g.*, AR 100, 445, 485, 521.)

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01        The Commissioner asserts that the evidence as a whole indicates that medication controlled

02   plaintiff's blood clotting and that this impairment did not significantly limit her ability to work.

03   For example, although plaintiff told Dr. Anita Peterson on November 21, 2001 that she had to

04   stand and move around every two hours to avoid a blood clot, Dr. Eileen Johnston, on November

05   16, 2001, found that plaintiff had "no recurrent thromboembolic disease on therapeutic doses of

06   Coumadin for her factor V Leiden." (AR 329, 333.)  (*See also* AR 468 (Dr. William Likosky

07   stated in a May 2002 report that plaintiff was "being managed" for her Leiden deficiency and that

08   "[t]he clinical manifestations of [her] stroke have waned to virtually nothing.") and AR 371 (Dr.

09   David A. White, in a June 2003 report, found plaintiff had "[c]hronic anti-coagulation need[,] but

10   stated that she "has really done quite well with anti-coagulation[.]")) The Commissioner also, like

11   the ALJ, takes notice that jobs such as plaintiff's past work usually provide for breaks at two-hour

12   intervals.  *See* Social Security Ruling (SSR) 96-9p ("In order to perform a full range of sedentary

13   work, an individual must be able to remain in a seated position for approximately 6 hours of an

14   8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately

15   2-hour intervals.") and (AR 22 (noting "most jobs allow a break every two hours" and stating that

16   plaintiff's need to move every two hours would not interfere with her past work) (citing Social

17   Security Program Operations Manual System (POMS) DI 25020.010 B 2 (mental abilities required

18   for any job include: "The ability to maintain concentration and attention for extended periods (the

19   approximately 2-hour segments between arrival and first break, lunch, second break, and

20   departure).""))

21        Plaintiff responds that the ALJ was not qualified as a vocational expert to make the

22   determination regarding two-hour breaks, and points to her testimony that her former job required

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

01  her to sit for approximately seven out of eight hours (AR 535), and her statement on a

02  questionnaire that she spent at least thirty minutes resting after sitting or standing for two hours

03  (AR 114). Plaintiff also objects to the Commissioner's argument that her coagulation limitation

04  is controlled through medication as an improper post hoc rationalization. *See Connett v.*

05  *Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (court erred in relying on evidence the ALJ did not

06  discuss).

07      Significantly, plaintiff points to no evidence from a physician or other medical professional

08  supporting her asserted need to move approximately every two hours.  Instead, she relies on

09  evidence either reflecting her self-report or taking the form of witness statements.  As discussed

10  below, however, the ALJ's decision to find plaintiff and her witnesses not entirely credible is

11  supported by substantial evidence.  Moreover, the ALJ specifically accounted for plaintiff's

12  asserted need to move every two hours at step four.  (*See* AR 22.)  Also, although plaintiff points

13  to evidence from her treating physician, Dr. Rayburn Lewis, supporting her claims regarding

14  fatigue and naps, the undersigned also below finds the ALJ's decision to not give weight to Dr.

15  Lewis's opinion supported by substantial evidence.  Accordingly, plaintiff fails to demonstrate any

16  error with respect to her blood disorder at step two.

17  B.    Cognitive Limitations

18      Plaintiff points to witness testimonials supporting her claim of cognitive limitations. (*See,*

19  *e.g.*, AR 97, 101, 124, 139, 141.)  She notes that memory testing by Dr. Peterson in November

20  2001 reflected she had difficulty understanding some instructions, had a slower learning curve than

21  would be expected in one aspect of the testing, that her recall was not as strong as her recognition,

22  and that Dr. Peterson expected "further improvement in cognitive functioning, post-CVA." (AR

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

01    334-35.)   Also, although acknowledging that Dr. Peterson concluded she had no mental

02    impairment severely limiting her ability to work, plaintiff notes that Dr. Peterson did not

03    specifically opine that she could return to her job as a software technician and analyst.  (AR 336.)

04         The Commissioner argues that the record contradicts plaintiff's allegation of severe

05    cognitive deficits.  She notes that, in May 2001, plaintiff reported to Dr. David Tempest that

06    "cognitively she is doing well . . . reading, doing finances, managing her affairs, parenting her 17-

07    year-old son[,]" and that Dr. Peterson found average and above average psychological test results

08    and no severe impairment.  (AR 312 and 333-36.)

09         The ALJ addressed the question of cognitive limitations as follows:

> I do not find that the claimant has a severe mental impairment.  Testing has not
> revealed any significant limitations.  The claimant's sister specifically stated that the
> claimant had no mental problems when she completed a questionnaire concerning the
> claimant a year after the claimant's stroke.  Two years later, she said that the
> claimant's condition had not changed, but reported numerous mental problems; this
> inconsistency reflects on the credibility of the testimony offered.   There is minimal
> evidence of any mental problems in the record.  The claimant has traveled with her
> church choir, and she reports that she worked part time.  Dr. Lewis has also stated
> that the claimant's condition is unchanged from 2002.  In 2002, no one was reporting
> any significant cognitive difficulties.  Indeed, the claimant was able to function well
> cognitively even during her hospitalization after the stroke.  The claimant is able to
> drive, shop, and cook.  There is no objective evidence other than lay statements made
> several years after the stroke, which indicate that the claimant had any mental
> limitations.  Doctors for the State Agency found no severe mental impairment (exhibit
> 12F).  Dr. Peterson had the claimant complete memory testing and made no mental
> diagnosis (exhibit 11F).

19    (AR 19.)  The ALJ also rejected the opinion of Dr. Lewis that plaintiff was disabled, in part, due

20    to cognitive limitations, stating objective evidence in his records, the records from other

21    physicians, and plaintiff's activities of daily living did not support his conclusion. (*See* AR 19 and

22    22 (stating, *inter alia*, that Dr. Likosky –  a neurologist, as compared to Dr. Lewis's internal

01 | medicine specialty – noted the "clinical manifestations of the claimant's stroke had waned to

02 | virtually nothing."))

03 |       Critically, as noted by the ALJ and the Commissioner, Dr. Peterson found plaintiff average

04 | to above average on testing and concluded "[n]o mental impairment severely limits her ability to

05 | work."  (AR 335-36.)  She also assessed plaintiff with a very high Global Assessment of

06 | Functioning (GAF) score of 85.  (AR 335.)  Also, as discussed below, the ALJ appropriately

07 | assessed the opinions of Dr. Lewis, plaintiff's credibility, and the testimony proffered by her

08 | witnesses.  For these reasons, plaintiff also fails to demonstrate error at step two with respect to

09 | her alleged cognitive limitations.

10 | Physicians' Opinions

11 |       In general, more weight should be given to the opinion of a treating physician than to a

12 | non-treating physician, and more weight to the opinion of an examining physician than to a non-

13 | examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where not contradicted

14 | by another physician, a treating or examining physician's opinion may be rejected only for "'clear

15 | and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).

16 | Where contradicted, a treating or examining physician's opinion may not be rejected without

17 | "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."

18 | *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  Where the opinion

19 | of the treating physician is contradicted, and the non-treating physician's opinion is based on

20 | independent clinical findings that differ from those of the treating physician, the opinion of the

21 | non-treating physician may itself constitute substantial evidence. *See Andrews v. Shalala*, 53 F.3d

22 | 1035, 1041 (9th Cir. 1995).  It is the sole province of the ALJ to resolve this conflict. *Id.*  Also,

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

01    the opinions of specialists are appropriately given more weight than non-specialists. *See Smolen*,

02    80 F.3d at 1285.

03       Plaintiff here contests the ALJ's assessment of the opinions of her treating physician, Dr.

04    Lewis.  The ALJ stated the following with respect to Dr. Lewis:

05       On August 28, 2002, Dr. Lewis stated that the claimant was, in his opinion, incapable
of full time duty, even at a light or sedentary status.  He indicated that the claimant

06       was so limited due to fatigue and balance problems. He felt that this could improve
over time (exhibit 19F).  This opinion has no proffered support on its face, and none

07       can be gleaned from Dr. Lewis' records.

08       . . .

09       In October 2004, Dr. Lewis wrote that the claimant had moderate residuals from a left
parietotemporal cerebrovascular accident including postural imbalance, fatigue,

10       cognitive deficits and depression with coagulopathy requiring anticoagulation,
osteoporosis and a history of a colon resection for diverticulosis as well as

11       hyperlipidemia.  He said that her condition was stable and unchanged from 2002.  He
said that she remained incapable of full time sedentary activity and that subtle

12       cognitive changes remained a substantive barrier to her returning to productive
activity (exhibit 21F).  Objective evidence in Dr. Lewis' records, again, provide no

13       support for this opinion.

14       . . .

15       Once again, I have considered the statement of Dr. Lewis that the claimant is limited
to part time work due to fatigue, cognitive problems, and balance problems, but I give

16       this opinion no weight.  Dr. Lewis' treatment notes do not show frequent reports of
these problems.  Dr. Lewis is the claimant's primary care physician, but he is only an

17       internal medicine specialist.  The claimant has seen a number of specialists.  Dr.
Likosky is a neurologist, and he noted that the clinical manifestations of the claimant's

18       stroke had waned to virtually nothing.  It is for this reason that he turned treatment
over to Dr. Lewis (Exhibit 18F, pp. 5-9).  Dr. White, who is subcertified in

19       hematology noted that the claimant appeared well and bright, she moved comfortably
and her muscle strength was symmetric (Exhibit 16F, p. 3).  Dr. Lewis' notes, the

20       reports of Dr. White, Dr. Likosky, the claimant's activities of daily living, and the
reviewing physicians for the State Agency all suggest that the claimant is not as

21       limited as Dr. Lewis has indicated in his letter.

22

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

01   (AR 18-22.)  (*See also* AR 19 (in finding plaintiff had no severe mental impairment, stating: "Dr.

02   Lewis has also stated that the claimant's condition is unchanged from 2002.  In 2002, no one was

03   reporting any significant cognitive difficulties.  Indeed, the claimant was able to function well

04   cognitively even during her hospitalization after the stroke.")) The ALJ also more specifically

05   addressed plaintiff's activities of daily living in assessing her credibility and witness statements (AR

06   19-22).

07        Pointing to documents in the record, plaintiff disputes the ALJ's assertion that Dr. Lewis's

08   notes did not support his opinion regarding her inability to work. (*See* AR 363 (October 2001 note

09   that left-side ataxia worse with fatigue and difficulties stepping up on footstool with left foot); AR

10   360 (March 2002 note that he would help her reapply for disability benefits); AR 513 (September

11   2002 note that plaintiff "still requires naps"); AR 443 (November 2002 note that her left hand grip

12   was slightly weaker and she walked sparingly); AR 495 (June 2004 note that she had sleeping

13   difficulties)).  She also points to symptoms recorded by other doctors. (    *See* AR 329 (Dr.

14   Johnston, in November 2001, noted that she had some residual weakness in her left lower

15   extremity and significant emotional impact in compromising her previously very active lifestyle);

16   AR 334-35 (Dr. Peterson, in November 2001, noted some difficulty in understanding instructions,

17   a slower learning curve than would be expected in one respect, and that her recall was weaker than

18   her recognition); AR 468 (Dr. Likosky, in May 2002, noted "a virtually trivial drift of the left

19   arm"); and AR 371 (Dr. White, in June 2003, noted fatigue in her muscle strength and that her left

20   leg was a bit weaker)).  She also points to the supportive reports of her witnesses.

21        As found by the ALJ, Dr. Lewis's notes do not provide sufficient support for his 2002 and

22   2004 conclusions regarding the degree of plaintiff's limitations.  Moreover, the reports from other

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -10

01   doctors, including specialists, are not particularly helpful to plaintiff's argument.  The November

02   2001 report from Dr. Johnson is dated much closer in time to plaintiff's April 2001 stroke than

03   are the later letters from Dr. Lewis.  Dr. Peterson's report, as indicated above, does not support

04   plaintiff's claims.  (*See* AR 333-36.)  Nor is Dr. Likosky's May 2002 note helpful, pointing to a

05   "virtually trivial" arm drift and stating that "[t]he clinical manifestations of [her] stroke [had]

06   waned to virtually nothing." (AR 468.)  Also, Dr. White's report, although noting plaintiff's

07   reports of fatigue, is generally quite positive, particularly with respect to her success with anti-

08   coagulation treatment.  (*See* AR 371.)  In addition, as noted by the ALJ, state agency reviewing

09   physicians in November 2001 found no severe mental impairment and in April 2002 limited her

10   to light work.  (AR 337-56.)  In sum, as indicated above, plaintiff does not demonstrate that the

11   ALJ erred in his consideration of the opinions of Dr. Lewis.

12                                    Credibility Assessment

13          Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

14   reject a claimant's testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  *See*

15   *also Thomas*, 278 F.3d at 958-59.  In finding a social security claimant's testimony unreliable, an

16   ALJ must render a credibility determination with sufficiently specific findings, supported by

17   substantial evidence.  "General findings are insufficient; rather, the ALJ must identify what

18   testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81

19   F.3d at 834.  "We require the ALJ to build an accurate and logical bridge from the evidence to her

20   conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."

21   *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the

22   ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -11

01  his testimony and his conduct, his daily activities, his work record, and testimony from physicians

02  and third parties concerning the nature, severity, and effect of the symptoms of which he

03  complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

04      In this case, the ALJ rendered the following credibility assessment:

05      As noted, I do not find the claimant or her laywitness [stet] to be completely credible.
        The claimant left her work several months prior to her cerebrovascular accident.
06      After the stroke the claimant has remained active and involved.  She does her own
        cooking, cleaning, shopping and driving.  She is able to sing choral music well enough
07      to be with a choir that has twice traveled out of state since her alleged onset.  She is
        involved in card games and a book club.  A year after her stroke, her sister, who was
08      living with the claimant at the time, specifically stated that the claimant had no mental
        impairment.  At that time, her daughter felt any memory problems were minor.  At the
09      hearing the claimant's daughter mentioned a number of mental problems in terms of
        memory and confusion, but memory testing revealed no significant impairments in
10      memory or concentration.

11  (AR 21.)

12      Plaintiff asserts that the ALJ failed to provide clear and convincing reasons for discrediting

13  her testimony.  She notes that she had been laid off from her job six months prior to her stroke,

14  received a length of service retirement, and did not claim disability until after her stroke.  She

15  further states that her attempt at working twenty hours a week at her church was unsuccessful.

16  With respect to her various activities, plaintiff points to evidence in the record supporting her

17  claim that they were sporadic, punctuated by periods of rest, and generally more difficult than they

18  were prior to her stroke.  Also, although she traveled out of state twice since her stroke – once

19  to New Orleans for a family reunion and once to Los Angeles with her choir – she notes her

20  previously very active lifestyle, including things like bowling and sporting events.  Plaintiff also

21  again points to evidence in the record supporting her claim of cognitive limitations.

22      While plaintiff does not lead as active a lifestyle as she did previous to her stroke, the ALJ

01  did not err in pointing to her post-stroke activities as calling into question her assertion of

02  disability.  Also, as stated above, the ALJ's decision finding no severe cognitive limitations is

03  supported by substantial evidence.  As such, the undersigned finds that the ALJ's credibility

04  assessment withstands scrutiny.

05                                      <u>Lay Witness Testimony</u>

06          Lay witness testimony as to a claimant's symptoms or how an impairment affects ability

07  to work is competent evidence.  *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  The

08  ALJ can reject the testimony of lay witnesses only upon giving reasons germane to each witness.

09  *See Smolen*, 80 F.3d at 1288-89 (finding rejection of testimony of family members because, *inter*

10  *alia*, they were "'understandably advocates, and biased'" amounted to "wholesale dismissal of the

11  testimony of all the witnesses as a group and therefore [did] not qualify as a reason germane to

12  each individual who testified.") (citing *Dodrill*, 12 F.3d at 918).  *Accord Lewis v. Apfel*, 236 F.3d

13  503, 511 (9th Cir. 2001) ("[L]ay testimony as to a claimant's symptoms is competent evidence

14  that an ALJ must take into account, unless he or she expressly determines to disregard such

15  testimony and gives reasons germane to each witness for doing so.")

16          Plaintiff first asserts that the ALJ erred in failing to give any reasons for dismissing the

17  statement proffered by her pastor/former employer, Robert L. Manaway, Sr.  (*See* AR 142-43.)

18  She asserts that this statement provided first hand observations of her difficulty in working only

19  twenty hours a week following her stroke.

20          In his letter, Manaway indicates that plaintiff spent the last two years working as the

21  secretary for his church and states in relevant part:

22          I affirm that Mary's stroke greatly diminished her quality of life.  Before Mary had the

01  stroke she as [stet] a very successful single mother, and a happy carefree individual.
She spent the early years raising her son Joey.  No one was as committed as Mary was
02  with the task of mothering.

03  Mary was also a member of our Gospel choir.  She would rock and clap at the same
time back then.  But after the stroke Mary was not able to be fully involved in many
04  choir activities.

05  About six month [stet] after the stroke Mary came to work with me in the front office.
It was here that I noticed her good and bad days.  Some days her memory was sharp
06  and quick.  But on other days she labored to get through everyday task. [stet] I can
tell you that being at the church and being responsible for important matters helped
07  her get through some very difficult times.  It was in this atmosphere that I noticed the
greatest difference in her life.

08

09  (AR 142.)

10        Plaintiff next asserts that the ALJ did not consider the remaining witness information in the

11  context in which it was provided, that is, noting changes in her functioning since the stroke.  *See*

12  *generally Regennitter v. Commissioner of Social Sec. Admin.*, 80 F.3d 1273, 1289 (9th Cir. 1996)

13  (stating testimony from lay witnesses who see a plaintiff everyday is of particular value).  Plaintiff

14  asserts that, although reciting the testimony of those witnesses in the decision, the ALJ did not

15  provide reasons germane to each witness.  She also rejects the ALJ's contention that these

16  statements conflicted with the medical evidence, asserting that they, instead, provide additional

17  clarification.

18        The Commissioner concedes the ALJ's failure to specifically address Manaway's letter,

19  but asserts that this omission was either acceptable entirely or at most harmless error.  She cites

20  *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), for the proposition that the ALJ need

21  not reject non-probative evidence.  The Commissioner describes the statement as vague and of

22  questionable value, asserting that is unclear what Manaway meant by plaintiff's "good and bad

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -14

01  days" or how she "labored."  (AR 142.)  With respect to the latter comment, the Commissioner

02  points to plaintiff's testimony that she did not have any difficulty working the twenty hours a week

03  at the church because she "could get up and walk as often as [she] needed" and her failure to

04  mention having any cognitive difficulties.  (AR 537.)

05       The Commissioner responds that the other lay witness statements were somewhat

06  inconsistent, noting plaintiff's sister indicated both that plaintiff's mental functioning was impaired

07  and unimpaired.  (*See* AR 119-23 (stating in April 2002 that she had not recognized any mental

08  or emotional problems) and AR 141 (indicating in June 2004 problems in mental alertness, speech,

09  thought, and memory)).  She further generally argues that the ALJ accurately concluded that the

10  tenor of these statements conflicted with the medical evidence.

11       The Commissioner's reliance on *Vincent* is misplaced.  As noted in *Van Nguyen*, the lay

12  witnesses in *Vincent* offered diagnoses, which was not considered competent evidence, whereas

13  lay testimony as to symptoms and how they affect an individual's ability to work is competent

14  evidence. 100 F.3d at 1467.  However, the undersigned agrees that the ALJ's failure to specifically

15  address Manaway's letter was harmless and that the ALJ provided sufficient reasons for finding

16  plaintiff's witness statements not completely credible.

17       The ALJ described in detail both the medical record and statements from plaintiff's sister,

18  daughter, and friend.  (AR 17-19.)  He then concluded that, in the face of the "objective testing

19  and objective medical opinion (as opposed to the likely accommodating nature of plaintiff's

20  treating source opinions)[,]" he was "unable to accord significant probative weight to the

21  supportive statements of claimant's lay witnesses."  (AR 19.)  He thereafter cites an extensive

22  amount of case law to support his conclusion that "the lay testimony in this case cannot <u>outweigh</u>

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -15

01 | [his] analysis of the objective clinical and laboratory evidence, and medical opinion of record, and

02 | of claimant's own credibility." (AR 19-21.) The ALJ added: "In other words, as the trier of fact

03 | in this matter, I find that the subjective elements of proof offered in this case, even with lay

04 | corroboration of activities and behavior, cannot carry claimant's burden of proof on disability."

05 | (AR 21.)

06 |       Also, as reflected above, the ALJ proffered criticisms specific to the testimonials of

07 | plaintiff's sister and daughter. (*See* AR 19 ("The claimant's sister specifically stated that the

08 | claimant had no mental problems when she completed a questionnaire concerning the claimant a

09 | year after the claimant's stroke. Two years later, she said that the claimant's condition had not

10 | changed, but reported numerous mental problems; this inconsistency reflects on the credibility of

11 | the testimony offered.") and AR 21 ("A year after her stroke, her sister, who was living with the

12 | claimant at the time, specifically stated that the claimant had no mental impairment. At that time,

13 | her daughter felt any memory problems were minor. At the hearing the claimant's daughter

14 | mentioned a number of mental problems in terms of memory and confusion, but memory testing

15 | revealed no significant impairments in memory or concentration.")) Although the ALJ did not

16 | include any individual reasons for rejecting the questionnaire and letter from plaintiff's friend, Rae

17 | Richardson, he outlined the content of the letter and it is apparent from his decision that he

18 | discounted the opinions contained therein as contrary to the medical evidence in the record. (*See*

19 | AR 18-21, 96-100, and 144.)

20 |       It is also apparent that, although he failed to outline Manaway's letter, the ALJ's reasoning

21 | for rejecting all of the witness statements was equally pertinent to the contents of that letter. That

22 | is, in the face of the medical evidence of record, the lay testimony was not afforded significant

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -16

01  probative weight.  Therefore, the ALJ's failure to specifically address Manaway's letter was

02  harmless.  For these reasons, the undersigned concludes that plaintiff fails to demonstrate

03  reversible error in the ALJ's consideration of her lay witnesses.

04                                              Vocational Expert

05          Finally, plaintiff argues that the ALJ should have called a vocational expert to testify given

06  the limitations caused by her blood disorder – including her need to move around every two hours

07  and rest for thirty minutes after that movement, as well as her cognitive limitations.  She cites

08  cases requiring the use of a vocational expert at step five where a claimant suffers from the non-

09  exertional limitation of needing to alternate sitting and standing.  *Tackett v. Apfel,* 180 F.3d 1094,

10  1103-04 (1999); *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991).  *See also Burkhart v.*

11  *Bowen*, 856 F.2d 1335, 1340-41 (9th Cir. 1988) (ALJ erred, after finding significant non-

12  exertional limitations at step five, in that he "assumed the role of vocational expert himself[,]"

13  thereby basing speculations on information outside the record, depriving plaintiff of the

14  opportunity to cross-examine or rebut, and rendering a decision lacking evidentiary support).  She

15  also asserts that the ALJ erred in assuming she could perform her complex previous work without

16  questioning a vocational expert as to the necessary cognitive requirements for that work.  Plaintiff

17  further avers that the ALJ failed to consider or mention the testimony of her daughter, who had

18  direct knowledge given her position as a human resources manager for the same company, as to

19  the requirements of the job and the reasons why her mother could not perform the work, as well

20  as to her cognitive limitations generally.  (*See* AR 544-49.)

21          The parties also, as explained above, dispute the propriety of the ALJ taking notice that

22  most jobs provide for breaks at two-hour intervals and his consequent conclusion that plaintiff's

01   need to move every two hours would not interfere with her ability to perform that work.

02   As noted by the Commissioner and reflected in the cases relied on by plaintiff, the

03   argument regarding plaintiff's alleged nonexertional limitations applies only at step five.  Here, the

04   ALJ concluded his decision at step four, where vocational expert testimony is discretionary.  20

05   C.F.R. § 404.1560(b)(2); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  Additionally,

06   as noted above, the ALJ did take into consideration plaintiff's alleged need to move every two

07   hours. (AR 22 (noting "most jobs allow a break every two hours" and stating that plaintiff's need

08   to move every two hours would not interfere with her past work) (citing POMS DI 25020.010 B

09   2 (mental abilities required for any job include: "The ability to maintain concentration and attention

10   for extended periods (the approximately 2-hour segments between arrival and first break, lunch,

11   second break, and departure).")) *See also* SSR 96-9p (describing "2-hour intervals" in a

12   workday.)  The ALJ, therefore, did not err either in failing to call a vocational expert, or in taking

13   notice as to the typical provision of breaks at two-hour intervals.  Also, because he otherwise

14   provided germane reasons for rejecting her testimony, the ALJ also did not err in not directly

15   addressing the testimony of plaintiff's daughter as to plaintiff's former job responsibilities.

16                                                  **CONCLUSION**

17   For the reasons described above, this matter should be AFFIRMED.  A proposed order

18   accompanies this Report and Recommendation.

19   DATED this 25th day of April, 2006.

20

21                                                          Mary Alice Theiler
                                                            United States Magistrate Judge

22

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -18